United States Bankruptcy Court
Southern District of Texas
ENTERED
October 22, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 19-33765** |
| **SAM ANTHONY PAIZ,** | § | |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | **CHAPTER 7** |

# MEMORANDUM OPINION

Sam Anthony Paiz seek sanctions against Sanj Capital Funding, LLC and Kurusk Sanjana for violations of the discharge injunction. The Court enjoins Sanj and Sanjana from further violations of the discharge injunction. To secure compliance, the respondents must temporarily deposit $5,000.00 into the Court's registry.

## BACKGROUND

In July 2018, the County Civil Court at Law No. 2 of Harris County entered a $35,000 judgment in favor of Sanj against Sam Anthony Paiz, MIAH Investments, LLC, and LMS Tax and Insurance Solutions, LLC, jointly and severally. ECF No. 66-1 at 10. The judgment was recorded in the real property records as a judgment lien.

Paiz filed this chapter 7 case on July 2, 2019. ECF No. 1. Sanj participated in the bankruptcy case by filing Proof of Claim No. 21-1 based on the judgment. ECF No. 66-1 at 17–18. The chapter 7 trustee ultimately reported that there was no property available for distribution to creditors. Chapter 7 Trustee's Report of No Distribution, Mar. 30, 2020.

On July 14, 2020, Paiz received a chapter 7 discharge. ECF No. 58. Sanj was served with the discharge order. ECF No. 60. The discharge order expressly advised creditors that they could not attempt to collect a discharged debt from Paiz personally, including by contacting him by mail, telephone, or otherwise for that purpose. ECF No. 58 at 1.

On January 31, 2024, Sanj executed a partial release of its judgment lien as to specified properties. ECF No. 66-1 at 23–26. The instrument identified the underlying $35,000 judgment and expressly described itself as a partial release. ECF No. 66-1 at 23. Shortly thereafter, Kurush Sanjana communicated directly with Paiz concerning payment of the balance of the judgment. The communications continued into 2025 and became increasingly explicit. *See* Exs. H–N, ECF No. 71.

In June 2024, Sanjana asked Paiz where he stood "with the money" and pressed him about how many more weeks payment would be delayed. Ex. M, ECF No. 71 at 49. On April 7, 2025, Sanjana demanded the "$15 K you owe me," threatened to place a lien against Paiz's "new business," threatened to impose interest retroactively, and gave Paiz twenty-four hours to pay before a lien would be placed on his new businesses. Ex. N, ECF No. 71 at 51.

On May 8, 2026, Paiz filed his Motion for Contempt, Sanctions, and Adversary Relief based on alleged violations of the discharge injunction. ECF No. 66. The Court held an initial hearing on June 16, 2026 and directed Paiz to supplement his pleading, allowed a further response, and continued the evidentiary hearing to July 16, 2026.

The Court conducted the continued evidentiary hearing on July 16, 2026. After considering the testimony, exhibits, and arguments, the Court found that the discharge injunction was violated from February 2024 through April 2025.

The Court did not immediately determine the appropriate sanction. Instead, because Paiz had not fully established a quantifiable monetary loss, the Court directed the parties to address whether and to what extent a civil sanction may be imposed for an established discharge violation when monetary damages are nonexistent or not fully proven.

The Court found that the discharge injunction was violated over a period exceeding one year. ECF No. 77. Findings of Fact and Conclusions of Law on that issue were made on the record and are incorporated into this Memorandum Opinion by reference. The violation was not limited to a single ambiguous communication: the record includes repeated demands directed to Paiz personally and culminates in an express demand for $15,000 coupled with a twenty-

four-hour ultimatum and a threat to place liens against his new businesses. Ex. N, ECF No. 71 at 51. An appropriate order is necessary to enforce the discharge injunction. If the Court does not impose a remedy, it is clear that the Respondents will again violate the discharge injunction. The remaining question is the nature and amount of sanction that will deter future wrongful conduct.

## DISCUSSION

Section 524(a)(2) provides that a chapter 7 discharge "operates as an injunction" against an act to collect a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Sections 524(a)(2) and 105(a), taken together, authorize a bankruptcy court to enforce the discharge injunction through civil contempt. *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) ("[T]hese provisions authorize a court to impose civil contempt sanctions . . . ."); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir. 1997) ("[W]e conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code."). A creditor may be held in civil contempt when "there is no fair ground of doubt" that the discharge order prohibited the creditor's conduct. *Taggart*, 587 U.S. at 557.

The Court has already determined that standard was satisfied here. The July 14, 2020 discharge order expressly states that creditors may not attempt to collect a discharged debt from Paiz personally and may not contact him by telephone or otherwise in an effort to collect such a debt. ECF No. 58 at 1.

Despite the discharge, Sanjana repeatedly communicated directly with Paiz concerning payment. He made repeated payment demands beginning in February 2024 and continuing through 2025. *See* Exs. A–N, ECF No. 71. On April 7, 2025, Sanjana asked whether Paiz would pay the "$15 K you owe me," threatened to place a lien on Paiz's new business, threatened to impose interest retroactively, and gave Paiz twenty-four hours to pay before liens would be placed on his new businesses. Ex. N, ECF No. 71 at 51. Those communications sought payment from Paiz personally, rather than merely asserting rights against a non-debtor obligor. The Court therefore found that the discharge injunction had been violated. ECF No. 77.

The remaining question is the remedy. At the July 16 hearing, the Court directed the parties to address whether sanctions

may be imposed when a discharge violation has occurred, but monetary damages have not been proven.

### A. The Court May Impose Only Compensatory or Coercive Sanctions

A contempt sanction imposed by a bankruptcy court must serve one of two purposes: it must either coerce compliance with a court order or compensate a party for losses caused by the violation. *In re Highland Capital Management, L.P.*, 98 F.4th 170, 174 (5th Cir. 2024).

A coercive monetary sanction must be conditional and must afford the contemnor an opportunity to avoid or reduce the sanction through compliance. *Highland Capital*, 98 F.4th at 175; *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge."). By contrast, a compensatory sanction must be based on evidence of an actual loss sustained because of the contemptuous conduct. *Highland Capital*, 98 F.4th at 175. A fixed monetary award that neither compensates an established loss nor gives the contemnor an opportunity to purge is punitive in character. *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 398 (5th Cir. 2004).

*Wheeler* illustrates that limitation in the discharge-injunction context. There, after finding the defendants in contempt under § 105 for violating the discharge injunction under § 524(a)(2), the district court imposed a fixed $10,000 contempt sanction payable to the Clerk of Court. *Wheeler v. Collier (In re Wheeler)*, 596 F. App'x 323, 325–26 (5th Cir. 2015) (per curiam). The Fifth Circuit held that the sanction was criminal in nature because it was not compensatory, did not remedy the consequences of the contemptuous conduct, and was "unconditional and punitive" because it did not depend on the defendants' future compliance. *Id.* at 326.

Prospective coercive relief designed to secure compliance with the injunction is consistent with Fifth Circuit case law.

### B. An Unconditional Monetary Penalty for Completed Violations Is Not Available on This Record

Paiz relies on *In re Diaz*. There, after finding that a debt assignee repeatedly attempted to collect a debt despite knowing that it had been discharged, this Court awarded the debtors $591.20 in

actual damages for lost time and mileage, $12,236.92 in attorney's fees and expenses, imposed an additional $17,000 monetary sanction based on the number and character of the offending communications, and enjoined the assignee from further collection efforts. 526 B.R. 685, 692–95 (Bankr. S.D. Tex. 2015).

*Diaz* recognizes that losses caused by discharge-injunction violations may be compensated, that reasonable attorney's fees and expenses may be recovered, and that prospective injunctive relief may be appropriate to prevent further collection activity. *Id.* at 693–95. *Diaz* also characterized its additional $17,000 award as coercive, although the amount was calculated from completed collection communications and the award was not expressly conditioned on future compliance. *Id.* at 694. In determining the appropriate civil-contempt remedy here, the Court must apply the Fifth Circuit's requirement that a monetary sanction imposed through civil contempt either compensate an actual loss or coerce compliance through a conditional sanction that affords an opportunity to purge. *In re Highland Capital Management, L.P.*, 98 F.4th 170, 174–75 (5th Cir. 2024); *United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994). The Court does not treat *Diaz* as authorizing an unconditional, noncompensatory fine under § 105(a) for the completed violations found in this case.

*In re Sanburg Financial Corp.* recognizes the availability of monetary relief for violations of a discharge injunction. 446 B.R. 793, 803–04 (S.D. Tex. 2011). There, the district court affirmed a $500,000 attorney's-fee award imposed after the creditor pursued discharged claims in state court. *Id.* Although *Sanburg* discussed earlier decisions recognizing punitive damages for discharge violations, the sanction actually affirmed consisted of attorney's fees rather than a separate punitive monetary award. *Id.* Accordingly, *Sanburg* supports the availability of compensatory attorney's fees, subject to the requirement that the fees awarded were caused by the contemptuous conduct. *Highland Capital*, 98 F.4th at 175–77.

The Court's holding is limited to civil-contempt sanctions for violations of the discharge injunction under §§ 524(a)(2) and 105(a). It does not address punitive damages where separately authorized by statute. For example, § 362(k)(1) expressly permits punitive damages, in appropriate circumstances, for an individual injured by a willful automatic-stay violation. 11 U.S.C. § 362(k)(1); *see Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019). This case, however, concerns post-discharge violations of § 524(a)(2), for which the Court exercises its civil-contempt authority under § 105(a).

### C. Compensatory Damages Must Be Caused by the Discharge Violation

Compensatory damages remain available. *Terrebonne Fuel*, 108 F.3d at 613. But the Court must identify a loss caused by the conduct it found contemptuous. *Highland Capital*, 98 F.4th at 175–176. The Court may not infer a compensatory amount merely from the seriousness or duration of the violation.

Paiz identifies a $15,000 payment made in connection with the January 31, 2024 real estate closing and a later $38,524.66 payment arising from the April 2026 refinance of property owned by MIAH Investments, LLC. ECF No. 71 at 10–11. But the Court's contempt finding concerns the personal collection communications occurring from February 2024 through April 2025. ECF No. 77. The $38,524.66 identifies the payment as arising from a refinance closing involving property owned by MIAH Investments, LLC. ECF No. 71 at 6, 10–11. Paiz decided to pay money to obtain a release of lien against property owned by an affiliate. Enforcement of the judgment lien was not a violation of the discharge injunction. Neither was Paiz's decision to use his personal money to assist an affiliate in payment of the lien.

### D. Paiz May Recover Fees Caused by the Discharge Violation

Attorney's fees stand on a different footing. A fee award may constitute compensatory civil-contempt relief when the fees were necessarily incurred because of the violation. *Highland Capital*, 98 F.4th at 175–76; *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). The question is causation. A bankruptcy court may shift "only those attorneys' fees incurred because of the misconduct at issue." *Highland Capital*, 98 F.4th at 175 (quoting *Goodyear*, 581 U.S. at 109).

*Highland Capital* does not establish that fees incurred in enforcing an injunction can never be recovered. To the contrary, it recognized authority allowing fees where a party "necessarily expended fees in bringing an action to enforce the injunction." *Id.* at 176 (quoting *In re Skyport Global Communications, Inc.*, 661 F. App'x 835, 841 (5th Cir. 2016)). The problem in *Highland Capital* was that much of the award resulted from extensive proceedings directed toward matters unnecessary to redress the particular contemptuous act. *Id.* at 176–77. The Fifth Circuit therefore required the bankruptcy court to separate expenses actually caused

by the violation from expenses that would have been incurred anyway. *Id.*

The Fifth Circuit's subsequent decision in *Dondero v. Highland Capital Management, L.P.*, 105 F.4th 830 (5th Cir. 2024), reinforces this distinction. There, the bankruptcy estate sustained no independently quantifiable loss apart from attorney's fees, yet the Fifth Circuit affirmed a compensatory contempt sanction based on fees and expenses incurred to protect the estate from the contemnor's misconduct. *Id.* The Fifth Circuit explained that a bankruptcy court may exercise reasonable discretion in allocating expenses caused by contempt, including through supported estimates or by attributing an entire category of expenses to the misconduct. *Id.* The absence of other quantified damages does not preclude an award of reasonable attorney's fees that were actually caused by the violation.

Respondents themselves recognize that a properly supported fee award remains available under that standard. They argue that the Court must determine what fees were actually incurred, whether those fees were reasonable and necessary, whether they would have been incurred absent the violative conduct, and whether the requested amount has been limited to the incremental expense caused by that conduct. ECF No. 78 at 11–13.

The Court agrees. Paiz was initially proceeding without counsel, but appeared with counsel at the July 16 evidentiary hearing and thereafter filed Paiz's post-hearing submission. ECF No. 77; Post-Hearing Case Law, ECF No. 79. To the extent Paiz seeks attorney's fees as compensatory relief, he must establish the amount actually incurred and demonstrate that the requested fees were reasonable, necessary, and caused by the conduct found to violate the discharge injunction. Any fees attributable to unrelated disputes, claims against non-debtor entities, or matters that would have been litigated regardless of the discharge violation must be excluded. *Highland Capital*, 98 F.4th at 175–77.

Accordingly, Paiz will be permitted to submit an application for reasonable attorney's fees and expenses incurred because of Respondents' violation of the discharge injunction. The application must identify the work performed, the amount charged, and the relationship between the work and the conduct the Court found violative. Respondents will be afforded an opportunity to object.

### E. The Court Will Prohibit Further Personal Collection Against Paiz

The Court may enforce the discharge through prospective relief. Section 105(a) authorizes orders necessary or appropriate to carry out § 524, and *Diaz* entered an injunction prohibiting further collection of the discharged debt after repeated collection communications. 526 B.R. at 695. Paiz specifically asks the Court to prevent further personal collection activity. ECF No. 66 at 2–3.

Any such relief must respect the distinction between Paiz's discharged personal liability and liabilities or property rights unaffected by his discharge. The underlying state-court judgment was entered jointly and severally against Paiz, MIAH Investments, LLC, and LMS Tax and Insurance Solutions, LLC. ECF No. 66-1 at 10. Paiz's discharge protects Paiz from personal collection of the discharged obligation; it does not, by itself, discharge the liability of a non-debtor entity. 11 U.S.C. § 524(e).

The appropriate injunction is therefore limited. Sanj Capital Funding, LLC and Kurush Sanjana will be prohibited from taking any action to collect amounts from Paiz individually.

The Court requires strict compliance with this injunction. Because Respondents repeatedly pursued personal collection notwithstanding the discharge injunction, the Court concludes that prospective measures are warranted to secure future compliance. Section F therefore imposes a limited compliance mechanism. Any future violation may also result, after notice and an opportunity to be heard, in additional compensatory relief and additional coercive sanctions appropriate to secure compliance.

### F. A Limited, Temporary, Deposit will Secure Future Compliance

The Court must determine whether prospective coercive relief beyond the injunction entered above is necessary to secure compliance. In fashioning a coercive civil-contempt sanction, a court considers the harm threatened by continued noncompliance, the probable effectiveness of the sanction, the financial resources of the contemnor and the burden imposed, and the willfulness of the contemnor's disregard of the Court's order. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). The sanction must remain conditional on future conduct and must afford the contemnor a meaningful opportunity to purge the coercive consequence through compliance. *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821,

828–30 (1994); *In re Highland Capital Management, L.P.*, 98 F.4th 170, 174–75 (5th Cir. 2024).

The record demonstrates that a prospective compliance mechanism is warranted. Sanj participated in Paiz's bankruptcy case by filing a proof of claim based on the same $35,000 judgment that later became the subject of the collection communications. Sanj had actual notice of the bankruptcy proceeding and of Paiz's discharge. Nevertheless, the conduct found contemptuous was neither isolated nor momentary. Beginning in February 2024, Sanjana repeatedly communicated directly with Paiz concerning payment. Those demands continued through the spring of 2024 and included repeated follow-up communications, specific demands for substantial cash payments, and increasingly urgent requests for payment.

The pattern also demonstrates that temporary cessation did not necessarily signify lasting compliance. The communications reflect payment demands in June 2024. Approximately ten months later, on April 7, 2025, Sanjana again demanded payment directly from Paiz, this time asking whether Paiz would pay the "$15 K you owe me," threatening to place a lien against Paiz's new business, threatening retroactive interest, and allowing Paiz twenty-four hours to pay before the threatened action would occur. The Court has already determined that these communications were efforts to collect the discharged obligation from Paiz personally and that the discharge injunction was violated from February 2024 through April 2025.

The course of conduct continued over more than one year, consisted of numerous direct payment demands, escalated in severity, and resumed after a substantial interval. A prospective mechanism of sufficient duration to demonstrate sustained compliance is therefore appropriate.

The Court has also considered whether a less restrictive measure would adequately secure compliance. *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467-68 (5th Cir. 1996). In light of the duration, repetition, and recurrence of the conduct already found violative, the Court concludes that any lesser remedy would provide insufficient assurance that the prohibition will be observed over time.

The Court requires Sanj Capital Funding, LLC to deposit $5,000.00 into the registry of this Court. The amount is intended to be meaningful enough to encourage continuing compliance while

remaining limited in relation to the collection activity reflected in the admitted record, including the express $15,000.00 personal payment demand made on April 7, 2025. The $5,000.00 is not awarded to Paiz, is not payable to the United States, and is not imposed as punishment for Respondents' completed violations. No portion of the principal is forfeited merely because the Court previously found Respondents in contempt. For each twelve months of compliance, $1,000.00 of the $5,000.00 will be refunded to Sanj. The entire principal remains recoverable by Sanj through future compliance with this Order.

## CONCLUSION

Sanj and Sanjana are enjoined from further violations of Paiz's discharge injunction. Paiz will be awarded his reasonable attorney's fees and expenses caused by the violation. Sanj Capital Funding, LLC and Sanjana, jointly and severally, must deposit $5,000.00 into the Court's registry to secure future compliance. A separate order will issue.

SIGNED 10/22/2026

Marvin Isgur
United States Bankruptcy Judge